## TEXAS & N. O. RY. CO. v. COKER.
### (No. 1928.)

Court of Civil Appeals of Texas. Beaumont.
Jan. 23, 1930.

Seale & Denman, of Nacogdoches, for appellant.

J. J. Greve, of Nacogdoches, for appellee.

WALKER, J. On or about the 29th day of November, 1927, appellee shipped over appellant's line of railroad from Nacogdoches to Fort Worth a car of 54 head of cattle. In the transportation of these cattle from Nacogdoches to Jacksonville one cow and four calves were killed, and from Jacksonville to Fort Worth one calf was killed. Appellee filed this suit in justice court against appellant for the value of these cattle, alleging that they were in good condition when delivered to appellant and were killed through its negligence. Appellant answered by general denial and a special plea that the cattle were poor and weak when received by it and that their physical condition was the proximate cause of their death. Appellee recovered judgment in justice court, and appellant appealed to county court, where the case was tried de novo on the pleas as just stated. On the trial in county court the testimony of appellee was: "Those cattle were fat and stout. They were all in good condition. * * * They were all stout. The cattle that were tendered for shipment were in good condition."

Appellant's testimony was as follows: Conductor Faggard, who moved the shipment out of Nacogdoches, testified: "The cattle were loaded at 12:20 and put in my train at 12:55. There were seven head down and four in weak condition. One cow and two yearlings were apparently dead. * * * Their condition when I checked them up at Nacogdoches—they were thin." This witness testified to due care in moving the shipment, after it was delivered to him at Nacogdoches, to Jacksonville. But he testified, "I did not see the switch engine handle that car from the stock pen to the depot, where I was," and there was no testimony on that issue. He further testified that he left Nacogdoches "with seven head down. * *. * We tried to get those that were alive up." R. A. Landers, appellant's agent at Jacksonville, testified that the cattle were unloaded at Jacksonville, "the dead ones taken out and the car reloaded. There were five dead, they were all weak, poor and thin." W. H. O'Neil, appellant's conductor, testified that he handled the train from Jacksonville to Fort Worth and delivered them at "Delaware Junction. There was no rough handling of my train. It was handled in the ordinary way." Appellant offered no testimony as to the manner in which the shipment was handled from Delaware Junction to the stockyards. J. P. Yates was appellant's yard clerk at Nacogdoches and made up the record of this shipment. He testified: "One cow and two calves were thin and weak. We have a switch engine here. If there had been any rough handling of a car my records would show it. My records do not show any rough or improper handling. I make records where there is rough handling.

Nothing was reported to me in the way of rough handling of this car. If there had been any reported I would have made a record of it." Appellant offered in evidence a copy of the live stock contract under which this shipment moved, made by this witness from the original contract. Upon the face of this contract it was noted, "One cow and two calves thin and weak." The blanks left on the face of the contract for the shipper's signature were marked, "Not signed." This witness testified that R. E. Hart was a party to this contract: "I made that copy and failed to sign his name. The original is in the office. I made the copy in order to keep the original on file. He signed there, but I failed to put it in because I was in a hurry. I made the copy and failed to put his name in because I was in a hurry, I guess, and just overlooked it."

The trial court overruled appellant's motion for an instructed verdict and sent the case to the jury upon six special issues, as follows: 1. "Was the cow and four calves which were found dead at Jacksonville in good shipping condition when received by the defendant at Nacogdoches?" 2. Was the defendant guilty of negligence in moving the cattle from Nacogdoches to Jacksonville? 3. Was such negligence, if any, the direct and proximate cause of the death of the one cow and four calves found dead at Jacksonville? Questions 4, 5, and 6 submitted these same issues as they related to the calf found dead at Fort Worth. All these issues were answered in favor of appellee and judgment entered accordingly.

Appellant. has two assignments of error. First, That the court erred in refusing to instruct a verdict in its behalf on the ground that under the undisputed evidence the cattle were weak and thin and the death of the cattle sued for was proximately caused by their physical condition when tendered for shipment, and further that there was no proof of negligence. The second assignment complains of the refusal to submit the two following requested issues: "Were any of the cattle in question thin and weak when received by the defendant at Nacogdoches, Texas, on November 29, 1927?" And "was such weak and thin condition of the cattle, if any, the proximate cause of their death?" The error assigned is that appellant had affirmatively pleaded that the cattle were weak and thin and that their death proximately resulted from their physical condition; this being an affirmative defense, it is insisted that it was error to refuse to submit it.

The assignments do not constitute error. Appellee raised the issue by his testimony that the cattle "were fat and stout" when tendered for shipment. The fact that within 25 minutes after the cattle were loaded seven of them were down raised the issue of negligence in taking them from the yard to the Jacksonville train. Appellant offered no evidence explaining the manner in which the switching crew handled this car. Also, appellant offered no testimony explaining how the car was handled from Delaware Junction to the stockyards at Fort Worth. It follows that no error was committed in refusing to instruct a verdict in appellant's behalf. We think Question No. 1 was a sufficient submission of appellant's affirmative defense that the cattle were weak and thin. Appellee pleaded and proved by his testimony that they were fat and stout. Appellant pleaded and proved by its testimony that they were weak and thin. This pleading and proof by both parties simply raised the issue as to the physical condition of the cattle when tendered for shipment and that issue was sent to the jury by question No. 1. But if in error in this analysis of the issues and of the legal effect of question No. 1, the court did not err in refusing to submit appellant's requested issues, and its assignment relates wholly to this ruling of the court. Had the court submitted appellant's first issue, that is, "were any of the cattle in question thin and weak when received by defendant at Nacogdoches," its answer would not have formed a basis for a judgment in its behalf. There would have been no finding that the particular cattle sued for were weak and thin nor how many of them were weak and thin. Appellant should have so framed its question as to direct the jury's attention to the particular cattle sued for, inquired of their condition and as to the number of such cattle that were weak and thin. We are also of the opinion that the evidence wholly failed to raise the issue that the physical condition of the cattle was the proximate cause of their death.

The case having been properly tried, the judgment of the lower court is affirmed.